RECORD NO.

# 14-121-CV

In The

# United States Court of Appeals

### For The Second Circuit

## RICK HARRISON, JOHN BUCKLEY, III, MARGARET LOPEZ, ANDY LOPEZ, KEITH LORENSEN, LISA LORENSEN, EDWARD LOVE, ROBERT MCTUREOUS, DAVID MORALES, GINA MORRIS, MARTIN SONGER, JR., SHELLY SONGER, JEREMY STEWART, KESHA STIDHAM, AARON TONEY, ERIC WILLIAMS, CARL WINGATE, TRACEY SMITH, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RUBIN SMITH,

*Plaintiff – Appellees*,

**v.**

## REPUBLIC OF SUDAN, AKA SUDAN,

*Defendant – Appellant.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW YORK AT NEW YORK CITY

_____

### BRIEF OF APPELLEES

_____

| | |
|---|---|
| **Andrew C. Hall** | **Edward H. Rosenthal** |
| **Brandon Levitt** | **Beth I. Goldman** |
| **Roarke O. Maxwell** | **FRANKFURT KURNIT KLEIN & SELZ, P.C.** |
| **HALL, LAMB AND HALL, P.A.** | **488 Madison Avenue, 10th Floor** |
| **Offices at Grand Bay Plaza** | **New York, New York 10022** |
| **2665 South Bayshore Drive** | **(212) 980-0120** |
| **Penthouse One** | |
| **Miami, Florida 33133** | |
| **(305) 374-5030** | |
| | |
| *Counsel for Appellees* | *Counsel for Appellees* |

*(Caption Continued On Inside Cover)*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

RECORD NO.

# 14-121-CV

ADVANCED CHEMICAL WORKS, AKA ADVANCED COMMERCIAL AND CHEMICAL
WORKS COMPANY LIMITED, AKA ADVANCED TRAINING AND CHEMICAL WORKS
COMPANY LIMITED, ACCOUNTS & ELECTRONICS EQUIPMENTS, AKA ACCOUNTS AND
ELECTRONICS EQUIPMENTS, AGRICULTURAL BANK OF SUDAN, ALAKTAN COTTON
TRADING COMPANY, AKA ALAKTAN TRADING COMPANY, ADVANCED COMMERCIAL
AND CHEMICAL WORKS COMPANY LIMITED, AKA ADVANCED CHEMICAL WORKS,
AKA ADVANCED TRADING AND CHEMICAL WORKS COMPANY LIMITED, ADVANCED
MINING WORKS COMPANY LIMITED, ADVANCED PETROLEUM COMPANY, AKA APCO,
AFRICAN OIL CORPORATION, ADVANCED ENGINEERING WORKS, ADVANCED
TRADING AND CHEMICAL WORKS COMPANY LIMITED, AKA ADVANCED
COMMERCIAL AND CHEMICAL WORKS COMPANY LIMITED, AKA ADVANCED
CHEMICAL WORKS, AL SUNUT DEVELOPMENT COMPANY, AKA ALSUNUT
DEVELOPMENT COMPANY, AFRICAN DRILLING COMPANY, AL PHARAKIM, AKA
ALFARACHEM COMPANY LIMITED, AKA ALFARACHEM PHARMACEUTICALS
INDUSTRIES LIMITED, AKA ALFARAKIM, ALAKTAN TRADING COMPANY, AKA
ALAKTAN COTTON TRADING COMPANY, ALFARACHEM COMPANY LIMITED, AKA AL
PHARAKIM, AKA ALFARACHEM PHARMACEUTICALS INDUSTRIES LIMITED, AKA
ALFARAKIM, AKA AL PHARAKIM, AKA ALFARACHEM
PHARMACEUTICALS INDUSTRIES LIMITED, AKA ALFARACHEM COMPANY LIMITED,
ALFARACHEM PHARMACEUTICALS INDUSTRIES LIMITED, AKA AL PHARAKIM, AKA
ALFARAKIM, AKA ALFARACHEM COMPANY LIMITED, ALSUNUT DEVELOPMENT
COMPANY, AKA AL SUNUT DEVELOPMENT COMPANY, APCO, AKA ADVANCED
PETROLEUM COMPANY, AMIN EL GEZAI COMPANY, AKA EL AMIN EL GEZAI
COMPANY, ARAB CEMENT COMPANY, ARAB SUDANESE BLUE NILE AGRICULTURAL
COMPANY, ASSALAYA SUGAR COMPANY LIMITED, ARAB SUDANESE SEED COMPANY,
ARAB SUDANESE VEGETABLE OIL COMPANY, ATBARA CEMENT COMPANY LIMITED,
AUTOMOBILE CORPORATION, BABANOUSA MILK PRODUCTS FACTORY, BANK OF
KHARTOUM, BASHAIER, BLUE NILE BREWERY, BLUE NILE PACKING CORPORATION,
CENTRAL ELECTRICITY AND WATER CORPORATION, AKA PUBLIC ELECTRICITY
AND WATER CORPORATION, BUILDING MATERIALS AND REFRACCTORIES
CORPORATION, COPTRADE COMPANY LIMITED, PHARMACEUTICAL AND CHEMICAL
DIVISION, CENTRAL BUREAU OF STATISTICS OF THE REPUBLIC OF SUDAN, EL AMIN
EL GEZAI COMPANY, AKA AMIN EL GEZAI COMPANY, COPTRADE ENG AND
AUTOMOBILE SERVICES CO LTD., AKA KORDOFAN AUTOMOBILE COMPANY, DUTY
FREE SHOPS CORPORATION, EL NILEIN BANK, EL NILEIN INDUSTRIAL
DEVELOPMENT BANK (SUDAN), AKA EL NILEIN INDUSTRIAL DEVELOPMENT BANK
GROUP, AKA NILEIN INDUSTRIAL DEVELOPMENT BANK (SUDAN), EL GEZIRA
AUTOMOBILE COMPANY, EL NILEIN INDUSTRIAL DEVELOPMENT BANK GROUP, AKA
INDUSTRIAL BANK OF SUDAN, ENGINEERING EQUIPMENT COMPANY, EL NILEIN
INDUSTRIAL DEVELOPMENT BANK (SUDAN), AKA EL NILEIN BANK, AKA EL NILEIN
INDUSTRIAL DEVELOPMENT BANK GROUP, AKA NILEIN INDUSTRIAL DEVELOPMENT
BANK (SUDAN), EL NILEIN INDUSTRIAL DEVELOPMENT BANK GROUP, AKA EL NILEIN

RECORD NO.

# 14-121-CV

BANK, AKA NILEIN INDUSTRIAL DEVELOPMENT BANK (SUDAN), AKA EL NILEIN
INDUSTRIAL DEVELOPMENT BANK (SUDAN), EL TAKA AUTOMOBILE COMPANY, AKA
TAKA AUTOMOBILE COMPANY, EMIRATES AND SUDAN INVESTMENTS COMPANY
LIMITED, ENGINEERING EQUIPMENT CORPORATION, EXPLORATION AND
PRODUCTION AUTHORITY, (SUDAN), FARMERS BANK FOR INVESTMENT & RURAL
DEVELOPMENT, AKA FARMERS BANK FOR INVESTMENT AND RURAL
DEVELOPMENT, AKA FARMERS COMMERCIAL BANK, SUDAN COMMERCIAL BANK,
SUDAN COMMERCIAL BANK, FARMERS BANK FOR INVESTMENT AND RURAL
DEVELOPMENT, AKA FARMERS COMMERCIAL BANK, FARMERS BANK FOR
INVESTMENT & RURAL DEVELOPMENT, FARMERS COMMERCIAL BANK, AKA
FARMERS BANK FOR INVESTMENT AND RURAL DEVELOPMENT, AKA SUDAN
COMMERCIAL BANK, AKA FARMERS BANK FOR INVESTMENT & RURAL
DEVELOPMENT, FRIENDSHIP SPINNING FACTORY, FOOD INDUSTRIES
CORPORATION, FORESTS NATIONAL CORPORATION, GEZIRA TANNERY, GEZIRA
AUTOMOBILE COMPANY, AKA EL GEZIRA AUTOMOBILE COMPANY, GEZIRA
SCHEME, AKA SUDAN GEZIRA BOARD, GEZIRA TRADE AND SERVICES COMPANY
LIMITED, AKA GEZIRA TRADE & SERVICES COMPANY LIMITED, GEZIRA TRADE &
SERVICES COMPANY LIMITED, AKA GEZIRA TRADE AND SERVICES COMPANY
LIMITED, GIAD AUTOMOTIVE COMPANY, AKA GIAD AUTOMOTIVE INDUSTRY
COMPANY LIMITED, AKA GIAD CARS & HEAVY TRUCKS COMPANY, GIAD CARS AND
HEAVY TRUCKS COMPANY, GIAD AUTOMOTIVE AND TRUCK, AKA GIAD AUTO, AKA
GIAD AUTOMOTIVE, GIAD AUTOMOTIVE AND TRUCK, AKA GIAD AUTOMOTIVE
COMPANY, AKA GIAD AUTOMOTIVE INDUSTRY COMPANY LIMITED, AKA GIAD CARS
& HEAVY TRUCKS COMPANY, AKA GIAD CARS AND HEAVY TRUCKS COMPANY, GIAD
AUTOMOTIVE INDUSTRY COMPANY LIMITED, AKA GIAD AUTOMOTIVE COMPANY,
AKA GIAD CARS & HEAVY TRUCKS COMPANY, AKA GIAD CARS AND HEAVY TRUCKS
COMPANY, AKA GIAD AUTOMOTIVE AND TRUCK, GIAD CARS & HEAVY TRUCKS
COMPANY, AKA GIAD AUTOMOTIVE COMPANY, AKA GIAD AUTOMOTIVE INDUSTRY
COMPANY LIMITED, AKA GIAD CARS AND HEAVY TRUCKS COMPANY, AKA GIAD
AUTOMOTIVE AND TRUCK, GIAD CARS & HEAVY TRUCKS COMPANY, AKA GIAD
AUTOMOTIVE COMPANY, AKA GIAD AUTOMOTIVE INDUSTRY COMPANY LIMITED,
AKA GIAD CARS AND HEAVY TRUCKS COMPANY, AKA GIAD AUTOMOTIVE AND
TRUCK, GIAD INDUSTRIAL GROUP, AKA SUDAN MASTER TECH, AKA SUDAN MASTER
TECHNOLOGY, AKA GIAD INDUSTRIAL CITY, GINEID SUGAR FACTORY, GIAD CARS
AND HEAVY TRUCKS COMPANY, AKA GIAD AUTOMOTIVE COMPANY, AKA GIAD
AUTOMOTIVE INDUSTRY COMPANY LIMITED, AKA GIAD CARS & HEAVY TRUCKS
COMPANY, AKA GIAD AUTOMOTIVE AND TRUCK, GIAD MOTOR INDUSTRY COMPANY
LIMITED, GIAD INDUSTRIAL CITY, AKA GIAD INDUSTRIAL GROUP, AKA SUDAN
MASTER TECH, AKA SUDAN MASTER TECHNOLOGY, GIAD MOTOR COMPANY, AKA
GIAD MOTOR INDUSTRY COMPANY LIMITED, GREATER NILE PETROLEUM
OPERATING COMPANY LIMITED, AKA GNPOC, GNPOC, AKA GREATER NILE
PETROLEUM OPERATING COMPANY LIMITED, GROUPED INDUSTRIES

RECORD NO.

# 14-121-CV

CORPORATION, HAGGAR ASSALAYA SUGAR FACTORY, HI TECH GROUP, AKA HIGH
TECH GROUP, AKA HIGHTECH GROUP, AKA HITECH GROUP, HICONSULT, AKA HI-
CONSULT, GUM ARABIC COMPANY LTD., AKA GUM ARABIC COMPANY, AKA GAC,
HICOM, AKA HI-COM, GUNEID SUGAR COMPANY LIMITED, AKA GUNEID SUGAR
FACTORY, HI-COM, AKA HICOM, GUNEID SUGAR FACTORY, AKA GUNEID SUGAR
COMPANY LIMITED, HI-CONSULT, AKA HICONSULT, HIGH TECH GROUP, AKA HI
TECH GROUP, AKA HIGHTECH GROUP, AKA HITECH GROUP, HIGHTECH GROUP, AKA
HI TECH GROUP, AKA HIGH TECH GROUP, AKA HITECH GROUP, HI-TECH
CHEMICALS, ICDB, AKA ISLAMIC CO-OPERATIVE DEVELOPMENT BANK, HITECH
GROUP, AKA HI TECH GROUP, AKA HIGH TECH GROUP, AKA HIGHTECH GROUP, HI-
TECH PETROLEUM GROUP, INDUSTRIAL BANK COMPANY FOR TRADE &
DEVELOPMENT LIMITED, AKA INDUSTRIAL BANK COMPANY FOR TRADE &
DEVELOPMENT LIMITED, INDUSTRIAL BANK COMPANY FOR TRADE &
DEVELOPMENT LIMITED, AKA INDUSTRIAL BANK COMPANY FOR TRADE &
DEVELOPMENT LIMITED, INDUSTRIAL PRODUCTION CORPORATION, INGASSANA
MINES HILLS CORPORATION, AKA INGESSANA HILLS MINES CORPORATION,
INDUSTRIAL BANK OF SUDAN, AKA EL NILEIN INDUSTRIAL DEVELOPMENT BANK
GROUP, INDUSTRIAL RESEARCH AND CONSULTANCY INSTITUTE, JUBA DUTY FREE
SHOP, INGESSANA HILLS MINES CORPORATION, AKA INGASSANA MINES HILLS
CORPORATION, ISLAMIC COOPERATIVE DEVELOPMENT BANK, AKA ICDB, KARIMA
DATE FACTORY, KARIMA FRUIT AND VEGETABLE CANNING FACTORY, KASSALA
FRUIT PROCESSING COMPANY, KASSALA ONION DEHYDRATION FACTORY, KENAF
SOCKS FACTORY, KENANA SUGAR COMPANY LTD., KENANA FRIESLAND DAIRY,
KENANA ENGINEERING AND TECHNICAL SERVICES, KENANA INTEGRATED
AGRICULTURAL SOLUTIONS, KHARTOUM GUM ARABIC PROCESSING COMPANY,
KHARTOUM CENTRAL FOUNDRY, KHARTOUM TANNERY, KHARTOUM COMMERCIAL
AND SHIPPING COMPANY LIMITED, KHARTOUM REFINERY COMPANY LTD., KHOR
OMER ENGINEERING COMPANY, KRIKAH INDUSTRIES GROUP, KORDOFAN
AUTOMOBILE COMPANY, AKA COPTRADE ENG AND AUTOMOBILE SERVICES CO
LTD., KORDOFAN COMPANY, LEATHER INDUSTRIES CORPORATION, AKA LEATHER
INDUSTRIES TANNERIES, MANGALA SUGAR FACTORY, LEATHER INDUSTRIES
TANNERIES, AKA LEATHER INDUSTRIES CORPORATION, MALUT SUGAR FACTORY,
MILITARY COMMERCIAL CORPORATION, MASPIO CEMENT CORPORATION, MAY
ENGINEERING COMPANY, MINISTRY OF AGRICULTURE AND IRRIGATION OF THE
REPUBLIC OF SUDAN, MINISTRY OF ANIMAL AND FISHERY RESOURCES AND
PASTURES OF THE REPUBLIC OF SUDAN, MINISTRY OF COMMERCE OF THE
REPUBLIC OF SUDAN, MINISTRY OF ENVIRONMENT, FORESTS AND PHYSICAL
DEVELOPMENT OF THE REPUBLIC OF SUDAN, MINISTRY OF CULTURE AND
INFORMATION OF THE REPUBLIC OF SUDAN, MINISTRY OF ELECTRICITY & WATER
RESOURCES OF THE REPUBLIC OF SUDAN, MINISTRY OF ENERGY AND MINING OF
THE REPUBLIC OF SUDAN, MINISTRY OF FEDERAL GOVERNANCE OF THE REPUBLIC
OF SUDAN, MINISTRY OF FINANCE AND NATIONAL ECONOMY OF THE REPUBLIC OF

RECORD NO.

# 14-121-CV

SUDAN, MINISTRY OF FOREIGN AFFAIRS OF THE REPUBLIC OF SUDAN, MINISTRY OF FOREIGN TRADE OF THE REPUBLIC OF SUDAN, MINISTRY OF GUIDANCE AND ENDOWMENTS OF THE REPUBLIC OF SUDAN, MINISTRY OF HEALTH OF THE REPUBLIC OF SUDAN, MINISTRY OF HIGHER EDUCATION AND SCIENTIFIC RESEARCH OF THE REPUBLIC OF SUDAN, MINISTRY OF HUMAN RESOURCES DEVELOPMENT &LABOR OF THE REPUBLIC OF SUDAN, MINISTRY OF HUMANITARIAN AFFAIRS OF THE REPUBLIC OF SUDAN, MINISTRY OF INFORMATION AND COMMUNICATIONS OF THE REPUBLIC OF SUDAN, MINISTRY OF INDUSTRY OF THE REPUBLIC OF SUDAN, MINISTRY OF INTERIOR OF THE REPUBLIC OF SUDAN, MINISTRY OF INVESTMENT OF THE REPUBLIC OF SUDAN, MINISTRY OF JUSTICE OF THE REPUBLIC OF SUDAN, MINISTRY OF MINERALS OF THE REPUBLIC OF SUDAN, MINISTRY OF OIL OF THE REPUBLIC OF SUDAN, MINISTRY OF SOCIAL WELFARE, WOMAN AND CHILD AFFAIRS OF THE REPUBLIC OF SUDAN, MINISTRY OF PARLIAMENTARY AFFAIRS OF THE REPUBLIC OF SUDAN, MINISTRY OF PUBLIC EDUCATION OF THE REPUBLIC OF SUDAN, MINISTRY OF SCIENCE AND TECHNOLOGY OF THE REPUBLIC OF SUDAN, MINISTRY OF YOUTH AND SPORT OF THE REPUBLIC OF SUDAN, MINISTRY OF TOURISM, ANTIQUITIES AND WILDLIFE OF THE REPUBLIC OF SUDAN, MINISTRY OF TRANSPORT, ROADS AND BRIDGES OF THE REPUBLIC OF SUDAN, MINISTRY OF WELFARE AND SOCIAL SECURITY OF THE REPUBLIC OF SUDAN, MODERN ELECTRONIC COMPANY, MODERN LAUNDRY BLUE FACTORY, AKA THE MODERN LAUNDRY BLUE FACTORY, NATIONAL CIGARETTES CO. LTD., MODERN PLASTIC & CERAMICS INDUSTRIES COMPANY, AKA MODERN PLASTIC AND CERAMICS INDUSTRIES COMPANY, MODERN PLASTIC AND CERAMICS INDUSTRIES COMPANY, AKA MODERN PLASTIC &CERAMICS INDUSTRIES COMPANY, NATIONAL COTTON AND TRADE COMPANY, NATIONAL ELECTRICITY CORPORATION, AKA SUDAN NATIONAL ELECTRICITY CORPORATION, AKA NATIONAL ELECTRICITY CORPORATION (SUDAN), NATIONAL REINSURANCE COMPANY (SUDAN) LIMITED, NEW HAIFA SUGAR FACTORY, NEW KHARTOUM TANNERY, NEW HALFA SUGAR COMPANY, AKA NEW HALFA SUGAR FACTORY COMPANY LIMITED, NILE CEMENT FACTORY, NEW HALFA SUGAR FACTORY COMPANY LIMITED, AKA NEW HALFA SUGAR COMPANY, NILE CEMENT COMPANY LIMITED, OMDURMAN SHOE FACTORY, NILEIN INDUSTRIAL DEVELOPMENT BANK, (SUDAN), AKA EL NILEIN BANK, AKA EL NILEIN INDUSTRIAL DEVELOPMENT BANK, (SUDAN), AKA EL NILEIN INDUSTRIAL DEVELOPMENT BANK GROUP, PLASTIC SACKS FACTORY, AKA SACKS FACTORY, NORTHWEST SENNAR SUGAR FACTORY, PORT SUDAN EDIBLE OILS STORAGE CORPORATION, OIL CORPORATION, PORT SUDAN COTTON AND TRADE COMPANY, AKA PORT SUDAN COTTON COMPANY, PETROHELP PETROLEUM COMPANY LIMITED, PORT SUDAN DUTY FREE SHOP, PETROLEUM GENERAL ADMINISTRATION, POSTS AND TELEGRAPHS PUBLIC CORPORATION, AKA POSTS & TELEGRAPHS CORP., PORT SUDAN COTTON COMPANY, AKA PORT SUDAN COTTON AND TRADE COMPANY, RABAK OIL MILL, PORT SUDAN REFINERY LIMITED, PUBLIC CORPORATION FOR IRRIGATION AND EXCAVATION, PORT SUDAN SPINNING

RECORD NO.

# 14-121-CV

FACTORY, PUBLIC CORPORATION FOR BUILDING AND CONSTRUCTION, RAINBOW
FACTORIES, PUBLIC CORPORATION FOR OIL PRODUCTS AND PIPELINES, PUBLIC
ELECTRICITY AND WATER CORPORATION, CENTRAL ELECTRICITY AND WATER
CORPORATION, REA SWEET FACTORY, RAM ENERGY COMPANY LIMITED, RED SEA
HILLS MINERALS COMPANY, RED SEA STEVEDORING, SACKS FACTORY, AKA
PLASTIC SACKS FACTORY, REFRIGERATION AND ENGINEERING IMPORT COMPANY,
SFZ, AKA SUDANESE FREE ZONES AND MARKETS COMPANY, ROADS AND BRIDGES
PUBLIC CORPORATION, SENNAR SUGAR COMPANY LIMITED, SHEIKAN INSURANCE
AND REINSURANCE COMPANY LIMITED, AKA SHEIKAN INSURANCE COMPANY,
SHERIEK MICA PROJECT, AKA SHEREIK MICA MINES COMPANY, SHEIKAN
INSURANCE COMPANY, AKA SHEIKAN INSURANCE AND REINSURANCE COMPANY
LIMITED, SHEREIK MICA MINES COMPANY, AKA SHERIEK MICA PROJECT, SRC, AKA
SUDAN RAILWAYS CORPORATION, SILOS AND STORAGE CORPORATION, SRDC, AKA
SUDAN RURAL DEVELOPMENT COMPANY LIMITED, SPINNING AND WEAVING
CORPORATION, STATE TRADING COMPANY, AKA STATE TRADING CORPORATION,
SUDAN AIR, AKA SUDAN AIRWAYS, AKA SUDAN AIRWAYS CO. LTD., STATE
CORPORATION FOR CINEMA, SUDAN COMMERCIAL BANK, FKA FARMERS BANK FOR
INVESTMENT & RURAL DEVELOPMENT, AKA FARMERS BANK FOR INVESTMENT AND
RURAL DEVELOPMENT, AKA FARMERS COMMERCIAL BANK, STATE TRADING
CORPORATION, AKA STATE TRADING COMPANY, SUDAN AIRWAYS, AKA SUDAN
AIRWAYS CO. LTD., AKA SUDAN AIR, SUDAN COTTON COMPANY, SUDAN EXHIBITION
AND FAIRS CORPORATION, SUDAN ADVANCED RAILWAYS, SUDAN COTTON
COMPANY LIMITED, SUDAN DEVELOPMENT CORPORATION, SUDAN GEZIRA BOARD,
AKA GEZIRA SCHEME, SUDAN MASTER TECH, AKA GIAD INDUSTRIAL CITY, AKA
GIAD INDUSTRIAL GROUP, AKA SUDAN MASTER TECHNOLOGY, SUDAN MASTER
TECHNOLOGY, AKA GIAD INDUSTRIAL CITY, AKA GIAD INDUSTRIAL GROUP, AKA
SUDAN MASTER TECH, SUDAN NATIONAL BROADCASTING CORPORATION, AKA
SUDAN RADIO & TV CORP., AKA SUDAN RADIO AND TV CORP., AKA SUDAN T.V.
CORPORATION, SUDAN OIL CORPORATION, SUDAN NATIONAL INFORMATION
CENTER, SUDAN OLYMPIC COMMITTEE, SUDAN NATIONAL PETROLEUM COMPANY,
AKA SUDAN PETROLEUM COMPANY LIMITED, AKA SUDAPET, AKA SUDAPET LTD.,
SUDAN OIL SEEDS COMPANY LIMITED, SUDAN PETROLEUM COMPANY LIMITED, AKA
SUDAPET, AKA SUDAPET LTD., AKA SUDAN NATIONAL PETROLEUM COMPANY,
SUDAN-REN CHEMICALS &FERTILIZERS LTD., SUDAN RURAL DEVELOPMENT
COMPANY LIMITED, SUDAN RADIO & TV CORP., AKA SUDAN NATIONAL
BROADCASTING CORPORATION, AKA SUDAN RADIO AND TV CORP., AKA SUDAN T.V.
CORPORATION, SUDAN SOAP CORPORATION, SUDAN RADIO AND TV CORP., AKA
SUDAN NATIONAL BROADCASTING CORPORATION, AKA SUDAN T.V. CORPORATION,
AKA SUDAN RADIO & TV CORP., SUDAN RAILWAYS CORPORATION, AKA SRC, SUDAN
SHIPPING LINE, AKA SUDAN SHIPPING, SUDAN T.V. CORPORATION, AKA SUDAN
NATIONAL BROADCASTING CORPORATION, AKA SUDAN RADIO AND TV CORP., AKA
SUDAN RADIO & TV CORP., SUDAN TEA COMPANY, LTD., SUDAN TELECOM, AKA

RECORD NO.

# 14-121-CV

**SUDAN TELECOM GROUP, AKA SUDATEL TELECOM GROUP, AKA SUDATEL, SUDAN
TELECOM GROUP, AKA SUDAN TELECOM, AKA SUDATEL TELECOM GROUP, AKA
SUDATEL, SUDAN TELECOMMUNICATIONS COMPANY LIMITED, AKA SUDATEL,
SUDATEL INVESTMENTS, SUDATEL TELECOM GROUP, AKA SUDATEL, AKA SUDAN
TELECOM GROUP, SUDATEL, AKA SUDAN TELECOM, AKA SUDATEL TELECOM
GROUP, AKA SUDAN TELECOM GROUP, SUDANESE ESTATES BANK, SUDAN
WAREHOUSING COMPANY, SUDANESE COMPANY FOR BUILDING AND
CONSTRUCTION LIMITED, SUDANESE FREE ZONES AND MARKETS COMPANY, AKA
SFZ, SUDANESE INTERNATIONAL TOURISM COMPANY, SUDANESE REAL ESTATE
SERVICES COMPANY, SUDANESE MINING CORPORATION, SUDANESE PETROLEUM
CORPORATION, SUDANESE SUGAR COMPANY, AKA SUDANESE SUGAR PRODUCTION
COMPANY LIMITED, SUDANESE SAVINGS BANK, SUDANESE STANDARDS &
METEROLOGY ORGANIZATION, SUDANESE SUGAR PRODUCTION COMPANY
LIMITED, AKA SUDANESE SUGAR COMPANY, SUDAPET LTD., AKA SUDAN
PETROLEUM COMPANY LIMITED, AKA SUDAN NATIONAL PETROLEUM COMPANY,
AKA SUDAPET, SUDAPET, AKA SUDAN PETROLEUM COMPANY LIMITED, AKA SUDAN
NATIONAL PETROLEUM COMPANY, AKA SUDAPET LTD., SUDATEL, AKA SUDAN
TELECOMMUNICATIONS COMPANY LIMITED, TAHEER PERFUMERY CORPORATION,
SUGAR AND DISTILLING CORPORATION, AKA SUGAR AND DISTILLING INDUSTRY
CORPORATION, SUGAR AND DISTILLING INDUSTRY CORPORATION, AKA SUGAR AND
DISTILLING CORPORATION, TAKA AUTOMOBILE COMPANY, AKA EL TAKA
AUTOMOBILE COMPANY, TEA PACKETING AND TRADING COMPANY, TAHREER
PERFUMERY CORPORATION, THE MODERN LAUNDRY BLUE FACTORY, AKA MODERN
LAUNDRY BLUE FACTORY, TOURISM AND HOTELS CORPORATION, WAFRA PHARMA
LABORATORIES, AKA WAFRA PHARMACEUTICALS, AKA WAFRAPHARMA
LABORATORIES, WAU FRUIT AND VEGETABLE CANNING FACTORY, WAFRA
PHARMACEUTICALS, AKA WAFRAPHARMA LABORATORIES, AKA WAFRA PHARMA
LABORATORIES, WHITE NILE BATTERY COMPANY, WAD MADANI DUTY FREE SHOP,
WAFRAPHARMA LABORATORIES, AKA WAFRAPHARMA LABORATORIES, AKA
WAFRA PHARMA LABORATORIES, WHITE NILE PETROLEUM OPERATING COMPANY,
AKA WNPOC, WAFRA CHEMICALS & TECHNO-MEDICAL SERVICES LIMITED, AKA
WAFRA CHEMICALS AND TECHNO-MEDICAL SERVICES LIMITED, WHITE NILE
TANNERY, WAFRA CHEMICALS AND TECHNOMEDICAL SERVICES LIMITED, AKA
WAFRA CHEMICALS &TECHNOMEDICAL SERVICES LIMITED,**

*Defendants,*

**NATIONAL BANK OF EGYPT, CREDIT AGRICOLE CORPORATE AND
INVESTMENT BANK,**

*Respondents.*

## CORPORATE DISCLOSURE STATEMENT

In compliance with Fed. R. App. P. 26.1, Plaintiffs-Appellees submit that each is an individual, not a corporation.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ...........................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATEMENT OF THE FACTS ...........................................................3

STATEMENT OF THE CASE..............................................................7

SUMMARY OF ARGUMENT ...........................................................10

ARGUMENT ...............................................................................12

I.     The District Court did not err in determining that Appellees complied with the FSIA's service of process requirements under 28 U.S.C. § 1608(a)(3), or in subsequently entering a default judgment against the Appellant................................12

II.    The FSIA does not require service of post-judgment motions to comply with 18 U.S.C. § 1608 where the default judgment has been properly served on the foreign state ..........................................20

III.   The District Court was not required to seek a Statement of Interest from the United States as to whether an OFAC license was necessary for turnover of the blocked Sudanese assets ...............24

CONCLUSION ..............................................................................31

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abur v. Republic of Sudan*,
   437 F. Supp. 2d 166 (D.D.C. 2006)..........................................................13, 14

*Alejandre v. Republic of Cuba*,
   42 F. Supp. 2d 1317 (S.D.Fla. 1999), *rev'd on other grounds sub nom*,
   *Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*,
   183 F.3d 1277 (11th Cir. 1999) ..............................................................28, 29

*Carcieri v. Salazar*,
   555 U.S. 379 (2009).......................................................................................19

*Connecticut Nat. Bank v. Germain*,
   503 U.S. 249 (1992).......................................................................................19

*Gray v. Permanent Mission of People's Republic of Congo*,
   443 F. Supp. 815 (S.D.N.Y. 1978), *aff'd*,
   580 F.2d 1044 (2d Cir. 1978) .......................................................................18

*Hardt v. Reliance Standard life Ins. Co.*,
   560 U.S. 242 (2010).......................................................................................19

*Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*,
   919 F. Supp. 2d 411 (S.D.N.Y. 2013) ...........................................9, 26, 27, 28

*Heiser v. Islamic Republic of Iran*,
   807 F. Supp. 2d 9 (D.D.C. 2011)....................................................................9

*Hill v Republic of Iraq*,
   2003 WL 21057173 (D.D.C. 2003)...............................................................29

*In re Islamic Republic of Iran Terrorism Litig.*,
   659 F. Supp. 2d 31 (D.D.C. 2009)................................................................29

*Mapoy v. Carroll*,
    185 F.3d 224 (4th Cir. 1999) ..........................................................................30

*New Jersey Air Nat'l Guard v. FLRA*,
    677 F.2d 276 (3d Cir. 1982) ..........................................................................30

*Peterson v. Islamic Republic of Iran*,
    627 F.3d 1117 (9th Cir. 2010) .............................................................21, 22, 23

*Rubin v. Islamic Republic of Iran*,
    709 F.3d 49 (1st Cir. 2013).............................................................................28

*Rux v. Republic of Sudan*,
    2005 WL 20862602 (E.D. Va. Aug. 26, 2005) ...........................11, 15, 16, 18

*Rux v. Republic of Sudan*,
    461 F.3d 461 (4th Cir. 2006) ..........................................................................16

*Silivanch v. Celebrity Cruises, Inc.*,
    333 F.3d 355 (2d Cir. 2003) ..................................................................... 9-10

*Underwood v. United Republic of Tanzania*,
    1995 WL 46383 (D.D.C. Jan. 27, 1995) .......................................................18

*Weininger v. Castro*,
    462 F. Supp. 2d 457 (S.D.N.Y. 2006) ....................................................*passim*

*Wye Oak Technology v. Republic of Iraq*,
    2010 WL 2613323 (E.D. Va. June 29, 2010).........................................*passim*

*Wye Oak Technology, Inc. v. Republic of Iraq*,
    941 F. Supp. 2d 53 (D.D.C. 2013).................................................................18

## STATUTES

28 U.S.C. § 517 ..............................................................................................26

28 U.S.C. § 1291 ...............................................................................................3

28 U.S.C. § 1605A .......................................................................................4, 29

28 U.S.C. § 1605A(g) ...........................................................................7

28 U.S.C. § 1608 ...........................................................................20, 21

28 U.S.C. § 1608(a) ...................................................................1, 12, 20

28 U.S.C. § 1608(a)(1) ...................................................................13

28 U.S.C. § 1608(a)(2) ...................................................................13

28 U.S.C. § 1608(a)(3) ...............................................................*passim*

28 U.S.C. § 1608(a)(4) .................................................................13, 16

28 U.S.C. § 1608(e) ...................................................................1, 7, 23

28 U.S.C. § 1610(c) ...........................................................................6

28 U.S.C. § 1610(f)(1) .................................................................29

28 U.S.C. § 1610(f)(1)(A) ..........................................................28, 29

28 U.S.C. § 1610(g) ...................................................................3, 30

**RULES**

Fed. R. App. P. 4(a) .......................................................................10

Fed. R. App. P. 4(a)(5) ..............................................................9, 10

Fed. R. Civ. P. 5(a)(2) ...........................................................11, 22, 24

Fed. R. Civ. P. 5(b)(2)(C) ...........................................................21

## REGULATIONS

31 C.F.R. § 515 .................................................................................28

31 C.F.R. § 515.203(e)........................................................................28

31 C.F.R. § 538 ..................................................................................7

## OTHER AUTHORITIES

C.P.L.R. § 5225.................................................................................30

C.P.L.R. § 5525(b) ............................................................................26

http://www.state.gov/documents/organization/211927.pdf ....................27

Omnibus Consolidated and Emergency Supplemental Appropriations
Act for 1999, Pub. L. 105–277, Div. A., Title I, § 117 (Oct. 21, 1998).................29

Presidential Determination No. 99-1, 63 FR 59201 (1998)....................29

Pub. L. 110-181, Div. A, Title X, § 1083(b)(3), Jan. 28, 2008, 122 Stat. 341 ........29

TRIA § 201(a) ..............................................................................28, 30

## INTRODUCTION

Nearly four years ago, the Plaintiffs-Appellees filed suit in the United States District Court for the District of Columbia seeking damages arising out of the severe and permanent injuries suffered by American sailors serving aboard the U.S.S. Cole.  These sailors, the Appellees in this action, were injured when the U.S.S. Cole was bombed by members of the worldwide terrorist organization, Al Qaeda.  This bombing could not have occurred were it not for the active support and assistance provided to Al Qaeda by the Republic of Sudan.

Despite being served with process in accordance with the Foreign Sovereign Immunities Act, as set forth in 28 U.S.C. § 1608(a), Sudan failed to respond or appear in the underlying action at any point.  After a non-jury trial determining Sudan's liability and the extent of damages, the District Court accordingly entered a default judgment against Sudan in the amount of $314,705,896 on March 30, 2012.  Despite receiving notice of the default judgment in accordance with 28 U.S.C. § 1608(e), Sudan once more failed to appear or challenge the default judgment.  Finding that sufficient time had passed since entry of the judgment – and recognizing that Sudan had once more failed to appear or contest the judgment, despite proper service – the District Court entered an Order on June 28, 2013 enabling the Appellees to seek attachment of Sudan's assets, as well as

frozen assets belonging to Sudan's agencies and instrumentalities.  Sudan again failed to challenge the Order.

Seeking to collect on the judgment, the Appellees registered the foreign judgment in the Southern District of New York on October 2, 2012.  After that Court also found that sufficient time had passed since entry of the default judgment, the Appellees began filing petitions for turnover of frozen assets owned by Sudan's agencies and instrumentalities.  Despite receiving notice of the post-judgment petitions and motions filed by the Appellees, Sudan repeatedly failed to appear or challenge the relief sought by the Appellees.

Indeed, it was not until four such Turnover Orders were entered by the District Court for the Southern District of New York that Sudan filed its notice of appearance and an untimely notice of appeal seeking reversal of three Turnover Orders entered by the Court.  In its appeal, Sudan argues that notice of both the underlying suit and the post-judgment proceedings was not properly provided to Sudan, due to the fact that service of the papers was made via the Sudanese Embassy, rather than delivered via mail to Khartoum, Sudan.  As described below, this very argument has been made by Sudan at least once before, only to be squarely rejected by the Court considering it.  The same result is merited here.

In addition, Sudan also argues that the Appellees are not entitled to seek turnover of the funds in question where they do not have an OFAC license, and

where the government has not issued a case-specific Statement of Interest within the instant proceedings.  Once more, Sudan ignores that the relevant authorities make clear that an OFAC license is not required, and also establish that the District Court is not required to seek a case-specific Statement of Interest where the government has previously made its position clear.  The instant appeal and its previously rejected arguments are devoid of merit and should be denied outright.

## JURISDICTIONAL STATEMENT

The Court has appellate jurisdiction under 28 U.S.C. § 1291 to review the January 6, 2014 Order of the District Court for the Southern District of New York insofar as it grants the Appellees' Petition for Turnover Order Against Credit Agricole Pursuant to 28 U.S.C. § 1610(g).

The Court does not have jurisdiction to review the December 12, 2013 and December 13, 2013 Turnover Orders, as the Appellant's Notice of Appeal filed on January 14, 2014 was untimely. The portion of the appeal relating to the December 12, 2013 and December 13, 2013 Turnover Orders should therefore be stricken.

## STATEMENT OF THE FACTS

The Plaintiffs-Appellees brought suit against the Defendant-Appellant on October 4, 2010, in the United States District Court for the District of Columbia.

(*See* Complaint, Supp. App. at 1-46).[1]  Fifteen of the Appellees are members of the crew of the U.S.S. Cole, who were severely and permanently injured on October 12, 2000 as a result of the bombing of the U.S.S. Cole by agents of Al Qaeda.  The remaining three Appellees are spouses of crew member Appellees, who suffered severe emotional distress and mental anguish as a result of the bombing and injuries suffered by their spouses.  The Appellees' Complaint presented claims under the statutory cause of action described in 28 U.S.C. § 1605A, which provides the courts of the United States with jurisdiction to hear a claim against a foreign state that is or was designated as a state sponsor of terrorism.  *Id*.

Following initiation of the suit, and shortly after the Appellees filed an Amended Complaint on October 11, 2010, a summons was issued as to the Appellant, Sudan.  (*See* D.D.C. Docket, Supp. App. at 59).  On November 5, 2010, the Appellees filed an affidavit requesting that the Clerk of Court mail a copy of the summons and complaint to the Republic of Sudan's Minister of Foreign Affairs via registered mail, return receipt requested, and pursuant to the applicable provision of the Foreign Sovereign Immunities Act ("FSIA"), codified at 28 U.S.C. § 1608(a)(3). (*See* Request for Foreign Mailing, Supp. App. at 66).

---

[1] References to the Joint Appendix filed by the Appellant are abbreviated as "Joint App."  References to the Supplemental Appendix filed by the Appellees are abbreviated as "Supp. App."  References to the docket within the Southern District of New York (corresponding with the instant proceedings) are included as "ECF No. ____."

On November 17, 2010, the Clerk of Court entered a Certificate of Mailing certifying that the Clerk mailed "[o]ne copy of the summons, complaint and notice of suit, together with a translation of each into the official language of the foreign state, by registered mail, return receipt requested, to the head of the ministry of foreign affairs, pursuant to the provisions of 28 U.S.C. § 1608(a)(3)." (*See* Certificate of Mailing, Supp. App. at 67-68). The package was sent to the Republic of Sudan's Minister of Foreign Affairs via the Sudanese Embassy located in Washington, D.C. *Id*. On November 23, 2010, the executed return receipt was received by the Clerk of Court, and a copy of the executed return receipt was entered on the docket. (*See* Executed Return Receipt, Supp. App. at 69-70).

After the Appellant failed to respond to the Appellees' Amended Complaint, the Appellees filed a Motion for Entry of Clerk's Default on January 18, 2011. (*See* Motion, Supp. App. at 71-78). On January 19, 2011, the Clerk of Court entered a default as to the Appellant. (*See* Default, Supp. App. at 79).

On February 9, 2011, the Appellees moved for entry of a default judgment against the Appellant. (*See* Motion for Default Judgment, Supp. App. at 80-82). On March 30, 2012, following a non-jury trial in which evidence was presented regarding the Appellant's liability and the Appellees' damages, the District Court for the District of Columbia entered a final judgment awarding the Appellees, in the aggregate, $314,705,896. (*See* Order and Judgment, Supp. App. at 83-84).

The District Court's entry of the default judgment was based, in part, upon a finding that service of the summons, complaint, and notice of suit, together with a translation of each into Sudan's official language, had been properly served on Sudan pursuant to 28 U.S.C. § 1608(a)(3). (*See* Opinion, Supp. App. at 88).

On April 19, 2012, the Appellees filed an Affidavit Requesting Foreign Mailing. (*See* Request for Foreign Mailing, Supp. App. at 131). Specifically, the Appellees requested that the Clerk effect service of the Notice of Default Judgment, as well as the Memorandum Opinion and Order and Judgment entered by the District Court (together with a translation of each into the official language of Sudan), by certified mail, return receipt requested, to the Republic of Sudan's Minister of Foreign Affairs. *Id.* On April 20, 2012, the Clerk of Court entered a Certificate of Clerk certifying that the documents were accordingly mailed to Sudan's Minister of Foreign Affairs via the Sudanese Embassy in Washington, D.C. (*See* Certificate of Mailing, Supp. App. at 132-134).

On May 29, 2013, the Appellees filed a motion which sought an order finding that sufficient time had passed to seek attachment of assets of the Appellant, as well as its agencies and instrumentalities, pursuant to the Terrorism Risk Insurance Act and 28 U.S.C. § 1610(c). (*See* Motion, Supp. App. at 135-209). On June 28, 2013, the District Court granted the Appellees' motion based, in part, upon its findings that "[p]ost-judgment service was effectuated on defendants

via mail service on April 23, 2012," and that notice of the judgment complied with 28 U.S.C. § 1608(e).  (*See* Order, Supp. App. at 210).  In addition, the District Court held that Appellees were entitled to seek the assets of the Appellant and its agencies and instrumentalities in satisfaction of the Appellees' final judgment.  *Id.*

## STATEMENT OF THE CASE

After discovery, the Appellees learned that certain entities within the jurisdiction of the Southern District of New York were holding assets of the Appellant and its agencies and instrumentalities.  These assets were frozen as a result of the Sudan Sanctions Regulations, 31 C.F.R. Part 538.  (Supp. App. at 136).  Upon learning of these assets, the Appellees registered the foreign judgment from the District Court for the District of Columbia within the Southern District of New York on October 2, 2012. (Case No. 1:12-mc-00328-P1).  (*See* 12-328 Docket, Supp. App. at 212).

On May 9, 2013, the Appellees filed a Notice of Pending Action – 28 U.S.C. § 1605A(g) Lis Pendens.  (*See* Notice, ECF No. 1).  This filing initiated a new proceeding (Case No. 1:13-cv-03127-PKC) that was deemed related to the previously filed registration proceeding. (*See* 13-3127 Docket, Joint App. at A1).

On May 31, 2013, the Appellees filed a Motion for Entry of Order Finding Sufficient Time Has Passed to Seek Attachment and Execution of

7

Defendant/Judgment Debtor's Assets. (*See* Motion, ECF No. 3). The District Court

entered an Order granting the Motion on September 20, 2013. The Order stated:

> The Court hereby concludes that, under 28 U.S.C. § 1610(c), all
> conditions precedent to the Plaintiffs' request to attach and execute
> against blocked assets of the Defendant/Judgment Debtor, Republic of
> Sudan, have been met, including providing proper notification of the
> default judgment to the Defendant/Judgment Debtor, pursuant to 28
> U.S.C. § 1608(e), and that, for the purposes of attachment and
> execution, a reasonable period of time has elapsed following the entry
> of judgment and the giving of notice to the Defendant/Judgment
> Debtor.  The Plaintiffs are hereby authorized to seek attachment of
> frozen assets located within this jurisdiction using post-judgment
> enforcement procedures.

(*See* Order, ECF No. 5 at pp. 1-2) (emphasis added).

After this Order was entered, the Appellees filed a series of petitions seeking

turnover of frozen assets owned by agencies and instrumentalities of the Appellant.

Included in these petitions were the Appellees' Petition for Turnover Order

Against BNP Paribas, filed October 28, 2013 (*See* Petition, ECF No. 9, amended at

ECF No. 13); the Appellees' Petition for Turnover Order Against Mashreqbank,

filed December 11, 2013 (*See* Petition, ECF No. 18); and the Appellees' Petition

for Turnover Order Against Credit Agricole, filed December 18, 2013 (*See*

Petition, ECF No. 23).   The Court subsequently granted these Petitions, and

entered Turnover Orders pertaining to Mashreqbank, BNP Paribas, and Credit

Agricole, respectively, on December 12, 2013, December 13, 2013, and January 6,

2013.  (*See* Turnover Orders, Joint App. at A65-A79).

Both the December 12, 2013 and December 13, 2013 Turnover Orders entered by the District Court held that "[a]n OFAC license is not necessary to disburse these funds and no notice is necessary to the Sudanese agencies and instrumentalities," based on the reasoning set forth in *Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 919 F. Supp. 2d 411, 422 (S.D.N.Y. 2013); *Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 23 (D.D.C. 2011); and *Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006). (*Id.* at A67; A73).

On January 14, 2014, the Appellant filed its First Notice of Appeal seeking reversal of the December 12, 2013; December 13, 2013; and January 6, 2014 Turnover Orders entered by the District Court in the Southern District of New York. (*See* Notice of Appeal, Joint App. at A108-A109). The Appellant's Notice of Appeal was filed more than 30 days after entry of the both the District Court's December 12, 2013 Turnover Order and the District Court's December 13, 2013 Turnover Order, thereby rendering the appeal untimely with respect to these two Turnover Orders.[2]  Despite the Appellant's untimely Notice of Appeal, the

_____

[2] The Appellant did file a defective notice of appeal (twice) on January 13, 2014. Despite knowledge of this defect, however, the Appellant failed to correct the improper notice, and elected instead to file an untimely appeal outside of the 30-day window permitted for appeal of the December 12, 2013 and December 13, 2013 Turnover Orders. The Appellant also failed to avail itself of the provisions of Fed. R. App. P. 4(a)(5), which would have allowed the Appellant to seek an extension of time to file a proper notice of appeal. The Court is therefore without jurisdiction to consider the instant appeal insofar as it relates to both of the December 2013 Turnover Orders. *See*, *e.g.*, *Silivanch v. Celebrity Cruises, Inc.*,

9

Appellant failed to move for an extension of time to file a notice of appeal under Fed. R. App. P. 4(a)(5) and thereby abandoned any opportunity it had to correct its deficient Notice of Appeal.

## SUMMARY OF ARGUMENT

Well more than three years after being served with the underlying pleading in this case, the Appellant appears and raises – for the first time on appeal – the sufficiency of process under the FSIA.  Notably, the Appellant never once contests that service occurred or that actual notice was provided.  Instead, Sudan argues, service could not be made in accordance with the FSIA by serving the Minister of Foreign Affairs via the Sudanese Embassy.  Service had to be made, according to Sudan, through international delivery to Khartoum, Sudan.

Sudan's argument finds its support in neither the language of the FSIA, nor the case law directly on point.  As described herein, the statute does not prescribe a specific location where the Minister of Foreign Affairs must be served, so long as service is properly directed to that individual. Moreover, service upon an embassy in accordance with the FSIA has been upheld as proper by at least two Courts considering the issue.  *See Wye Oak Technology v. Republic of Iraq*, 2010 WL

---

333 F.3d 355, 365 (2d Cir. 2003) ("Because Essef's notice of appeal was not filed until two days thereafter, it was untimely and we lack jurisdiction to hear Essef's appeal unless Essef satisfactorily took advantage of one of the exceptions provided by Rule 4(a).").

2613323, *5-6 (E.D. Va. June 29, 2010); *Rux v. Republic of Sudan*, 2005 WL 20862602, *16 (E.D. Va. Aug. 26, 2005).  As a result, Sudan's first argument fails.

Second, Sudan makes a fleeting reference to service of documents within the post-judgment proceedings, briefly implying that service of the post-judgment motions and petitions fail to comply with the FSIA.  As an initial matter, and as the Ninth Circuit has unequivocally held, post-judgment motions against a foreign state are not governed by the FSIA.  Furthermore, and despite the fact that the Appellees did serve their post-judgment motions and petitions upon Sudan via the Sudanese Embassy, the Appellees were never required to serve Sudan by virtue of the fact that Sudan was in default for failing to appear. *See* Fed. R. Civ. P. 5(a)(2). As such, the Appellant's second argument fares no better.

Finally, the Court must also reject Sudan's unsupported argument that an OFAC license was required before the District Court could enter the subject Turnover Orders.  The U.S. Department of Justice has clearly set forth its position that such a license is not required for a court to order the distribution of assets to a TRIA judgment holder, such as Appellees.  The government's publicly stated position is not limited to any one specific case, and thereby properly informed the District Court's discretion in entering the Turnover Orders at issue.

# ARGUMENT

**I.    The District Court did not err in determining that Appellees complied with the FSIA's service of process requirements under 28 U.S.C. § 1608(a)(3), or in subsequently entering a default judgment against the Appellant.**

The Appellant devotes the bulk of its brief to arguing that the Appellees' initial service of the complaint, summons, and notice of suit upon Sudan failed to comply with the Foreign Sovereign Immunities Act, and in turn robs the Court of personal jurisdiction.  Specifically, the Appellant contends that in delivering the service package to the Minister of Foreign Affairs of the Republic of Sudan *via the Sudanese Embassy*, the Appellees did not comply with any of the four means of service pronounced in 28 U.S.C. § 1608(a).  Reading language into the statute which simply is not there, the Appellant summarily states that proper service under Section 1608(a)(3) can only be made within Khartoum, Sudan.

This argument – unsupported by either case law or the statute itself – has been flatly rejected by those courts evaluating the sufficiency of service upon an embassy within the context of FSIA.  In one such case, the instant Appellant unsuccessfully made the identical arguments presented here, only for the court to find that service upon an embassy is an acceptable, *if not preferred*, method of service under Section 1608(a)(3).  Because the Appellant's position runs contrary to the prevailing authorities, as well as the actual text of the statute, its arguments relating to service should be rejected once more, just as they have by other courts.

12

It is undisputed that the FSIA "prescribes four methods for serving legal process on a foreign state, in descending order of preference." *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 172 (D.D.C. 2006). "The preferred method of service is delivery of the summons and the complaint 'in accordance with any special arrangement for service between the plaintiff and the foreign state.'" *Id.* (quoting 28 U.S.C. § 1608(a)(1)). In the absence of such an arrangement, the statute next permits delivery of the summons and complaint "in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(a)(2). If neither of these methods is available, then the plaintiff may proceed with service pursuant to subsection (3), which states:

> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign site, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned.

28 U.S.C. § 1608(a)(3). Finally, if mailed service cannot be made within thirty days, then the statute permits the plaintiff to request that the clerk of the court dispatch the service package to the Secretary of State, who "shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted." 28 U.S.C. § 1608(a)(4).

13

"Because plaintiffs had no 'special arrangement for service with … Sudan … and because neither country is a party to an 'international convention on service of judicial documents,' the preferred method of service is provided by section 1608(a)(3)—that is, any form of mail requiring a signed receipt." *Abur v. Republic of Sudan*, 437 F. Supp. 2d at 173.  In accordance with this statutory requirement, the Appellees' process papers were addressed to the Minister of Foreign Affairs, dispatched by the Clerk of Court for the District Court, District of Columbia, and delivered by certified mail, return receipt requested, to the Sudanese Embassy in Washington, D.C.  (See Certificate of Mailing, Supp. App. at 67-68).  An executed return receipt was provided to the Clerk of Court six days after the mailing.  (See Return Receipt, Supp. App. at 69-70).

After Sudan failed to respond to the Appellees' pleading, the sufficiency of the service of process was subsequently reviewed by the District Court upon the Appellees' motion for entry of default judgment.  (*See* Opinion, Supp. App. at 88).  The District Court stated in its Memorandum Opinion dated March 30, 2012:

> Plaintiffs effected service of the complaint, summons, and notice of suit on Sudan by mail.  See 28 U.S.C. § 1608(a)(3).  Sudan accepted service on November 17, 2010.  Return of Service/Affidavit, Nov. 23, 2010 [Dkt. #11].  Under § 1608(d) of the FSIA, this service obligated Sudan to serve and answer or other responsive pleading [sic] within 60 days after service. 28 U.S.C. § 1608(d).  It failed to do so.  On January 19, 2011 plaintiffs obtained entry of default from this court.  Clerk's Entry of Default, Jan. 19, 2011 [Dkt. #13].  Plaintiffs now

move for a default judgment [Dkt. # 14].  To date, Sudan has not served an answer or any other responsive pleading.

*Id*.

The Appellant does not dispute that such service upon the Sudanese Embassy in Washington, D.C. occurred, or even that the return of service was returned executed by an individual at the Sudanese Embassy. Rather, the Appellant contends that service was improper under subsection (3) because, although the process papers were addressed to Sudan's "Minister of Foreign Affairs," they were delivered to the Sudanese Embassy in the United States.  The Appellant contends that "[s]ervice on a foreign embassy in the United States or mission to the United Nations is not one of the methods of service provided in the Act," and that process must be delivered directly "by international mail or courier to the Ministry of Foreign Affairs in Khartoum, Sudan."  This is not the first time Sudan has made this same unsupported argument.

In *Rux v. Republic of Sudan*, 2005 WL 20862602, *16 (E.D. Va. Aug. 26, 2005), Sudan also argued that "subsection (3) requires that process be delivered directly to the Minister of Foreign Affairs in Sudan, as opposed to delivering it to him via that country's embassy."  In *Rux*, as here, Sudan argued that delivery by a diplomatic bag is forbidden, and that "[t]he U.S. Postal Service provides registered mail with return receipt to Khartoum, Sudan, and private companies such as DHL

15

offer deliveries to Sudan with signed receipts." *Id*. The *Rux* Court squarely

rejected Sudan's arguments, stating:

> [T]his argument ignores the inherent reliability and security associated with diplomatic pouches. The diplomatic bag, unlike the United States Postal Service, DHL or any other commercial carrier, is accorded heightened protection under international law to ensure safe and uncompromised delivery of documents between countries and among duly qualified government officials. *See* Vienna Convention on Diplomatic Relations, arts. 27 & 40, 23 U.S.T. 3227, T.I.A.S. No. 7502, 500 U.N.T.S. 95. Surely the legislature did not intend to designate the United States Postal Service or a commercial carrier as the preferred method of delivery to the Minister of Foreign Affairs. ***The text of 1608(a)(3) does not prohibit service on the Minister of Foreign Affairs at an embassy address. Indeed, the statute does not prescribe the place of service, only the person to whom process must be served.*** Sudan does not cite a single case in support of its position. To the contrary, the case law it cites involve instances where service was directed to a person other than the Ministry of Foreign Affairs. *See*, *e.g.*, *Magness v. Russian Fed'n*, 227 F.3d 609, 613 (5th Cir. 2001) (directing service to the president of the Russian Federation); *Transaero*, 30 F.3d at 153 (directing service to an ambassador). ***Accordingly, Sudan's objection to the sufficiency of process and service of process is overruled.***

2005 WL 20862602 at *16 (emphasis added). The *Rux* Court's decision was

subsequently appealed to the Fourth Circuit, who affirmed the district court's

holding after declining to review the issue of service under pendent appellate

jurisdiction. *See Rux v. Republic of Sudan*, 461 F.3d 461, 474-75 (4th Cir. 2006).

Similarly, in *Wye Oak Technology v. Republic of Iraq*, 2010 WL 2613323,

*5-6 (E.D. Va. June 29, 2010), the Republic of Iraq contested process under

Section 1608(a)(4) where it claimed service had never been properly attempted or

made pursuant to Section 1608(a)(3). Specifically, Iraq argued in its motion to dismiss that service made under subsection (4) was premature because the plaintiff had not complied with subsection (3) when it attempted to send the service package to the Iraqi Embassy in Washington, D.C, rather than directly to Iraq. The *Wye Oak* Court once again rejected the argument that service upon an embassy does not comply with subsection (3), stating:

> Here, in contrast to those cases cited by Iraq, Wye Oak complied with the statute on its face, directing the clerk of the court to mail the summons to the head of the Ministry of Foreign Affairs of Iraq, with the proper documents, translations, and copies enclosed. The sole issue is, then, whether attempting to transmit the service package through the Iraqi Embassy rendered the service ineffective.
>
> ***The Court concludes that the attempted service through the Embassy does not render service ineffective in this case.*** First, Wye Oak was not serving the Embassy itself or personnel within the Embassy, but rather attempting to sue the Embassy as a conduit for service. Second, given the state of affairs in Iraq, Wye Oak could reasonably think that service directly to the head of the Ministry of Foreign Affairs in Iraq was impossible in this case due to unique, war-time security issues and the rebuilding and restructuring of the Iraqi government. ***Third, Section (a)(3) does not impose a requirement that an otherwise proper service package must be delivered to a particular destination. No doubt, the address to which the service package is directed must bear some objectively reasonable relationship to the head of the Ministry of Foreign Affairs and the chosen method of delivery must have some reasonable expectation of success. However, there is nothing on the face of Section (a)(3) that prohibits Wye Oak's chosen method of delivery to the head of the Ministry of Foreign Affairs and, for that reason, there was no requirement in Section (a)(3) with which Wye Oak failed to "strictly" comply.***

*Id*. at \*5 (emphasis added).

17

After the *Wye Oak* Court rejected Iraq's argument within Iraq's motion to dismiss, the case was transferred to the District Court for the District of Columbia. *See Wye Oak Technology, Inc. v. Republic of Iraq*, 941 F. Supp. 2d 53 (D.D.C. 2013). That Court's Chief Judge, the Honorable Royce C. Lamberth, decided Iraq's subsequent motion for reconsideration concerning the adequacy of service of process, and ultimately denied the relief sought by Iraq. *Id*. at 56-57.

As both *Rux* and *Wye Oak* make evident, the FSIA does not require – contrary to the Appellant's argument – that a plaintiff's service package be delivered to a Ministry of Foreign Affairs within another country. Rather, service may be effected through delivery of the documents to the country's embassy in Washington, D.C., so long as the package delivered complies with the statute's other requirements concerning content and the proper addressee. This approach is further in keeping with the role of an embassy as an extension of the foreign state itself. *See*, *e.g.*, *Gray v. Permanent Mission of People's Republic of Congo*, 443 F. Supp. 815, 819 (S.D.N.Y. 1978), *aff'd*, 580 F.2d 1044 (2d Cir. 1978 (table decision) ("There can be no doubt that the Congo Mission is a foreign state within the meaning of [the FSIA]."); *Underwood v. United Republic of Tanzania*, 1995 WL 46383, *2 (D.D.C. Jan. 27, 1995) ("The functions of an embassy are so integrally related to the core functions of government that it qualifies as part of the

foreign state for service of process regardless of whether the embassy has a separate name and some power to conduct its own affairs").

Indeed, had Congress wished to include language specifying that service must occur within the geographical boundaries of the foreign state, it easily could have done precisely that.  The absence of this language indicates that Congress did not mean to restrict service under the FSIA to service occurring within the foreign state.  As the canons of construction make clear, such language should accordingly not be inserted into the language of the statute absent Congressional intent.  *See*, *e.g.*, *Connecticut Nat. Bank v. Germain*, 503 U.S. 249 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").  Rather, the plain and unambiguous statutory language must be enforced "according to its terms."  *Hardt v. Reliance Standard life Ins. Co.*, 560 U.S. 242, 251 (2010) (citing *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009)).

Because the Appellant did, in fact, receive process through the method prescribed by 28 U.S.C. § 1608(a)(3), as evidenced by the executed return of service sent back to the Clerk of Court (*See* Return Receipt, Supp. App. at 69-70), the District Court for the District of Columbia properly exercised personal jurisdiction over the Appellant, and its Orders are entitled to full faith and credit within the Southern District of New York.  Accordingly, the Appellant's

unsupported and previously unsuccessful argument relating to service must be rejected once more, and the Turnover Orders entered by the District Court for the Southern District of New York must be affirmed.

## II. The FSIA does not require service of post-judgment motions to comply with 28 U.S.C. § 1608 where the default judgment has been properly served on the foreign state.

In addition, the Appellant summarily states that "[t]he district court incorrectly held that its turnover orders need not be served on Sudan nor was the attachment action filed by Plaintiff required to be served on Sudan."  While it is unclear from the Appellant's argument as stated, the Appellant seems to suggest that notice of the turnover orders and the attachment action should also have been served in accordance with 28 U.S.C. § 1608(a).  According to the Appellant, the alleged failure to comply with the requirements of Section 1608(a) violates Sudan's "rights for service as a foreign sovereign" and renders the District Court's entry of turnover orders improper.  The Appellant fails to develop this argument in any meaningful way, citing no authority whatsoever for its blanket assertion, and ignoring the authority that is directly contrary to the Appellant's position.  In doing so, the Appellant once more poses an argument that has been rejected by Courts addressing the identical issue—an argument which must also be rejected here.

As an initial matter, the Appellees note that their papers in the post-judgment proceedings instituted in the Southern District of New York have been served on

20

Sudan via U.S. Mail addressed to Sudan's Minister of Foreign Affairs and sent to the Sudanese Embassy in Washington, D.C. (*See* ECF No. 3 at p. 15; ECF No. 9 at p. 15; ECF No. 13 at p. 3; ECF No. 18 at p. 12; ECF No. 23 at p. 13). These papers include each of the petitions seeking entry of the turnover orders presently at issue, as well as Appellees' Motion for Entry of Order Finding Sufficient Time Has Passed To Seek Attachment and Execution of Defendant/Judgment Debtor's Assets. *Id*. Notably, and despite this service, the Appellant has neither responded to nor opposed any of these filings. However, the Appellant's non-responsiveness does not change the fact that service of the post-judgment motions has complied with Federal Rule of Civil Procedure 5(b)(2)(C) governing the service of motions, and that service of post-judgment motions is not required to satisfy the heightened standards set forth by Section 1608.

In *Peterson v. Islamic Republic of Iran*, the plaintiffs sought to recover upon a default judgment entered against Iran for approximately $2.6 billion. 627 F.3d 1117, 1121 (9th Cir. 2010). As part of these efforts, the plaintiffs registered their judgment (originally obtained in District Court for the District of Columbia) with the Northern District of California and sought assignment of Iran's rights to payment from a French shipping company that periodically paid Iran for use of its harbors and for oil. *Id*. at 1121-22. In evaluating the motion for assignment, the district court concluded "that it could not enforce the plaintiffs' assignment motion

21

because they had not complied with FSIA's service requirements." *Id*. at 1130. The court based this reasoning on its improper determination that all post-judgment motions were required to comply with the heightened service standards governing service of a default judgment under the FSIA. *Id*. The plaintiffs appealed.

The Ninth Circuit reviewed the district court's ruling, ultimately finding that the district court had erred in holding that plaintiffs had not properly effected service. Within its analysis, the Ninth Circuit noted that – as Appellants argue here – "CGM CMA and the United States go further and argue that Iran should have been served with the registration of judgment with the Northern District of California and the subsequent motion for assignment of Iran's rights to payment from CMA CGM." 627 F.3d at 1130. The Court in turn noted that "Plaintiffs' counsel did mail their various assignment motions by regular U.S. mail, apparently without delivery confirmation, to a variety of high-level Iranian officials, including the Minister of Foreign Affairs." *Id*. at 1131.

The Ninth Circuit rejected the argument that Iran was entitled to service of the post-judgment motions, given that the FSIA does not require such service. *Id*. In addition, the Ninth Circuit found that service was not required under the Federal Rules because Fed. R. Civ. P. 5(a)(2) waives the service "requirement for motions against a party, like Iran, who is in default for failing to appear." *Id*. at 1131, fn. 5.

22

The Court accordingly found that the plaintiffs had fulfilled their service obligations with regard to the post-judgment motions. The Court stated:

> The FSIA is quite clear what a plaintiff must serve on a foreign state before a court may enforce a default judgment against that state: the default judgment. ***Service of post-judgment motions is not required.*** "Section 1608 sets forth the *exclusive procedures* with respect to service on … a foreign state." H.R. Rep. 94-1487, 1976 U.S.C.C.A.N. at 6622 (emphasis added). We may not add to those requirements. *But see Autotech Technologies LP v. Integral Research & Development Corp.*, 499 F.3d 737, 747-49 (7th Cir. 2007) (holding that FSIA's service provisions do not cover post-judgment motions and applying the federal rules for service instead); *Rubin v. Islamic Republic of Iran*, 2008 WL 192321 N.D. Ill. 2008) (same). ***If Congress had intended for foreign states to receive notice of every post-judgment motion, it would have said so. The district court erred in concluding that it could not enforce the plaintiffs' assignment motion because they had not complied with FSIA's service requirements.***

*Id*. at 1131 (emphasis added).

As *Peterson* points out, the FSIA does not require service of post-judgment motions. Indeed, the statute is silent as to any service requirements that would extend beyond providing notice of a default judgment. In the instant case, it is undisputed that service of the default judgment was effected pursuant to Section 1608(e). Moreover, both the District Court for the District of Columbia and the District Court for the Southern District of New York have issued Orders finding that service of the default judgment complied with Section 1608(e). (*See* Orders, Supp. App. at 210-211; ECF No. 5). As a result, the Appellees have complied with the FSIA's service requirements regarding the default judgment, as well as the

post-judgment motions.  Indeed, the Appellees have gone above and beyond by serving each motion and petition in the post-judgment proceedings on Sudan in compliance with the Federal Rules, even despite the fact that Fed. R. Civ. P. 5(a)(2) waives the requirement of service with regard to parties in default for failing to appear.  *See* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear.").  The Appellant's contention that service of the post-judgment motions and petitions in this case needed to be served to the Minister of Foreign Affairs in Khartoum, Sudan in order to comply with the FSIA should therefore be dismissed outright.

### III.    The District Court was not required to seek a Statement of Interest from the United States as to whether an OFAC license was necessary for turnover of the blocked Sudanese assets.

It is the stated position of the Department of Justice that an OFAC license is not needed for a court to order distribution of blocked assets to a TRIA judgment holder, if the court has determined those assets to be the property of the debtor state.  (*See* United States Statement of Interest, Supp. App. at 221).  Moreover, there is no federal regulation, statute, or judicial opinion that states a court must seek a Statement of Interest from the Department of Justice on this issue, prior to entering an order directing the turnover of blocked assets.  As such, the District Court did not err by ordering turnover of the blocked Sudanese assets at issue, without first requiring the plaintiffs to obtain an OFAC license or requesting a

24

Statement of Interest as to same.  Unsurprisingly, the Appellant has provided no authority to support its contrary argument that courts must seek a Statement of Interest from the Department of Justice in every case in which this issue arises. The Appellant's argument is devoid of merit and should be summarily rejected as having no legal basis.

In *Weininger v. Castro*, 05 Civ. 7214 (VM) (S.D.N.Y.), the District Court asked the U.S. Attorney to provide an advisory opinion as to whether an OFAC license was needed to distribute blocked assets of Cuba to the plaintiffs, who were TRIA judgment holders.  (Supp. App. at 239-239).  In response, the Department of Justice provided an opinion letter ("*Weininger* Letter"), stating that it was the Government's position that an OFAC license was not needed to distribute blocked assets to a TRIA judgment holder.  *Id.*  The Weininger Letter states, in pertinent part:

> [Section 201 of the TRIA] permits a plaintiff who "has obtained a judgment against a terrorist party on a claim based upon an act of terrorism" to attach "the blocked assets of that terrorist party." … In the event the Court determines that the funds are subject to TRIA, the funds may be distributed without a license from Office of Foreign Assets Control ("OFAC").  If, however, the Court determines that TRIA is inapplicable, the funds are not available for distribution in the absence of a license from OFAC.

*Id.*  Subsequently, in its decision on the plaintiffs' motion for partial summary judgment, the *Weininger* Court, referencing the Government's letter, ruled that an OFAC license was not needed to distribute the blocked assets at issue to the

25

plaintiffs. *Weininger v. Castro*, 462 F. Supp. 2d 457, 499 (S.D.N.Y. 2006). It held: "However, the U.S. Department of Justice has indicated that '[i]n the event the Court determines that the funds are subject to TRIA, the funds may be distributed without a license from the Office of Foreign Assets Control.' (DOJ Ltr.) Accordingly, under C.P.L.R. § 5525(b) such property may be used to satisfy Plaintiffs' judgments." *Id.*

The *Weininger* Letter was made publicly available on PACER as Exhibit "O" to the plaintiffs' motion for partial summary judgment. The availability of the Weininger Letter in the court's records was expressly noted by the *Weininger* Court in footnote two of its published decision on the plaintiffs' motion for partial summary judgment. *See id.* at 462 fn. 2.

Later, in *Estate of Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 11 Civ. 1601 (PKC) (S.D.N.Y.), the District Court, again, requested that the Department of Justice provide the Government's opinion as to whether an OFAC license was necessary to distribute blocked assets of a state sponsor of terrorism (Iran) to the plaintiffs, who were TRIA judgment holders. (See *Heiser* Statement of Interest, Supp. App. at 240-243). The Department of Justice responded by issuing a Statement of Interest letter ("*Heiser* Statement of Interest"), pursuant to 28 U.S.C. § 517. *Id.* The Government noted that it had previously addressed this issue in the *Weininger* Letter, reiterating that it did not deem an

26

OFAC license to be necessary for the release of blocked assets to a TRIA judgment holder.  (See *Heiser* Statement of Interest, Supp. App. at 242).  It directed the District Court to review its reasoning stated in the *Weininger* Letter, and included the *Weininger* Letter as an attachment to the Statement of Interest.  *Id.*  Further, it requested that the Clerk enter the Statement of Interest into the record as a separate docket entry.[3]  *Id.* at 243.  In accord with the Statement of Interest, in ruling on the plaintiffs' motion for summary judgment, the District Court held:

> The [Government's] Statement [of Interest] concludes that "in the event a court determines that blocked assets are subject to TRIA, those funds may be distributed without a license from OFAC." The Statement attaches a January 6, 2006 letter addressed to Judge Marrero in *Weininger v. Castro*, which asserted in identical terms that if the TRIA applied to the underlying funds, the funds can be distributed without a license from OFAC. … This Court is aware of no contrary authority that would require an OFAC license in this instance. It accepts the Statement of Interest's assertion that no OFAC license is required.

*Estate of Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 919 F. Supp. 2d 411, 422-23 (S.D.N.Y. 2013).

From the foregoing, it is evident that the United States has intended the *Weininger* Letter and *Heiser* Statement of Interest to represent its opinion as to whether an OFAC license was a prerequisite to the turnover of blocked assets to a TRIA judgment holder.  As there was no caveat that the United States' position

---

[3] The *Heiser* Statement of Interest is publicly available on the U.S. Department of State's website at http://www.state.gov/documents/organization/211927.pdf.

was applicable only in the *Weininger* and *Heiser* cases, the District Court, in the instant case, did not err by citing the United States' position as set forth and followed therein.

Further, the First and Eleventh Circuit Courts of Appeals have reached the same conclusion that an OFAC license is not needed to distribute blocked assets to a TRIA judgment holder, without reliance on a Statement of Interest from the Department of Justice. *See Rubin v. Islamic Republic of Iran*, 709 F.3d 49, 54 (1st Cir. 2013) ("TRIA [201(a)] thereby allows a person to circumvent the normal process for attaching assets that are blocked under a sanctions program, which entails obtaining a license from OFAC."); *see also Alejandre v. Telefonica Larga Distancia, de Puerto Rico, Inc.*, 183 F.3d 1277, 1287 (11th Cir. 1999) (holding that 28 U.S.C. § 1610(f)(1)(A) authorized the TRIA judgment holder's collection of blocked assets "without first obtaining a license under the [Cuban Assets Control Regulations, 31 C.F.R. pt. 515]."). In both cases, the Courts of Appeals relied upon the statutory language "[n]otwithstanding any other provision of law," in TRIA § 201(a) and 28 U.S.C. § 1610(f)(1)(A), to conclude that Congress intended to except TRIA judgment holders from the OFAC licensing regulations, 31 C.F.R. § 515.203(e). *Id.* Specifically, the *Alejandre* Court looked to the following language in § 1610(f)(1)(A) of the FSIA:

> ***Notwithstanding any other provision of law***, … any property with respect to which financial transactions are prohibited or regulated

pursuant to [certain statutes, including those authorizing the CACR,] *… or [any] license issued pursuant thereto, shall be subject to execution* or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune under section 1605(a)(7).[4]

*Id.* (emphasis added).  It held that the foregoing language showed the express intent of Congress to supersede OFAC licensing requirements.  *Id.*; *see also Hill v Republic of Iraq*, 2003 WL 21057173, *1 (D.D.C. 2003) (Section 201 of the TRIA states that "[n]otwithstanding any other provision of law," the blocked assets of a terrorist party "shall be subject to execution or attachment in aid of execution."  As the Court has frequently recognized, "the phrase 'notwithstanding any other

---

[4] It was the position of the United States at the time of the decision in *Alejandre*, supra, that 28 U.S.C. § 1610(f)(1) had been waived by Presidential Determination No. 99-1, 63 FR 59201 (1998), pursuant to § 117(d) of the Omnibus Consolidated and Emergency Supplemental Appropriations Act for 1999, Pub.L. 105–277, Div. A., Title I, § 117 (October 21, 1998).  *See Alejandre v. Republic of Cuba*, 42 F. Supp. 2d 1317, 1332 (S.D.Fla. 1999), *rev'd on other grounds sub nom Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*, 183 F.3d 1277 (11th Cir. 1999). The District Court in *Alejandre* held that 28 U.S.C. § 1610(f)(1) was not subject to waiver, under § 117(d).  *Id.*  The Eleventh Circuit declined to address the waiver issue on appeal, in the above quoted opinion.  *Alejandre*, 183 F.3d at 1279 n. 1. Subsequently, after passage of the TRIA, which repealed the President's § 117(d) waiver authority and at the same time provided a new waiver power, President William J. Clinton waived 28 U.S.C. § 1610(f)(1).  *See In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 57 (D.D.C. 2009).  As such, it may currently be unavailable to TRIA judgment holders for the purposes of execution. *Id.*  However, Congress later amended 28 U.S.C. § 1610(f)(1) to include claims brought under 28 U.S.C. § 1605A, such as the Appellees.  Pub.L. 110-181, Div. A, Title X, § 1083(b)(3), Jan. 28, 2008, 122 Stat. 341.  Whether the President's earlier waiver of 28 U.S.C. § 1610(f)(1) applies to claims brought pursuant to 28 U.S.C. § 1605A, appears to have not yet been specifically addressed through litigation.

provision of law,' or a variation thereof, means exactly that; it is unambiguous and effectively supersedes all previous laws."); *see also Mapoy v. Carroll*, 185 F.3d 224, 229 (4th Cir. 1999) (holding a statute which applies "notwithstanding any other provision of law" means that all other contrary statutes governing that subject are of no effect); *see also New Jersey Air Nat'l Guard v. FLRA*, 677 F.2d 276, 283 (3d Cir. 1982) ("Looking first to the statutory language, we immediately confront the preface to section 709(e) of the Technician Act, which explicitly provides that its terms apply 'Notwithstanding any other provision of law ….'  A clearer statement is difficult to imagine: section 709(e) must be read to override any conflicting provision of law in existence at the time the Technician Act was enacted.").

In the instant case, the District Court found that the assets at issue were the property of Sudan and subject to turnover pursuant to § 201(a) of the TRIA, C.P.L.R. § 5225, and 28 U.S.C. § 1610(g).  (*See* Turnover Orders, Joint App. at A65-A79).  Given the ample authority supporting the District Court's power to permit attachment and order turnover under these circumstances, it is clear that the District Court did not err by directing the assets at issue to be turned over to the Appellees.  The Appellant's meritless argument should be rejected and the District Court's Turnover Orders affirmed, accordingly.

## CONCLUSION

For the foregoing reasons, the Appellees respectfully request that this Court affirm the Turnover Orders on appeal where Sudan has been afforded proper notice and service in both the underlying and post-judgment proceedings, and where the District Court properly entered the Turnover Orders at issue.

Dated: June 30, 2014.

Respectfully submitted,

By:    /s/ Andrew C. Hall, Esq.

Andrew C. Hall, Esq.
Brandon Levitt
Roarke O. Maxwell, Esq.
Hall, Lamb and Hall, P.A.
Offices at Grand Bay Plaza
2665 South Bayshore Drive
Penthouse One
Miami, Florida 33133
Phone: (305) 374-5030
Fax:    (305) 374-5033

Edward H. Rosenthal, Esq.
Beth I. Goldman, Esq.
Frankfurt Kurnit Klein & Selz, P.C.
488 Madison Ave, 10th Floor
New York, New York 10022
Phone: (212) 980-0120
Fax:    (212) 593-9175

*Counsel for Appellees*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of June, 2014, I caused this Brief of Appellees and Supplemental Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Jeffrey J. Mirman
> HINCKLEY ALLEN & SNYDER, LLP
> 20 Church Street, 18th Floor
> Hartford, Connecticut  06103
> (860) 725-6200
>
> *Counsel for Appellant*

I further certify that on this 30th of June, 2014, I caused the required number of bound copies of the Brief of Appellees and Supplemental Appendix to be filed with the Clerk of the Court via UPS Next Day Air.

> /s/ Andrew C. Hall
> *Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*7,960*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[      ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Corel WordPerfect 12*] in [*14pt Times New Roman*]; *or*

[      ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: June 30, 2014                    /s/ Andrew C. Hall
                                        *Counsel for Appellees*